MAX F. UTESS, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

Railroads — master and servant — negligence — overloading locomotive tender with coal — action by employee injured by fall of coal from locomotive tender.

Upon the trial of an action by an employee to recover for injuries caused by coal falling upon him from the tender of a locomotive, plaintiff introduced in evidence two rules of the railroad company defining the duty of enginemen in the operation of locomotives, the providing them with fuel and other supplies and as to the direction of the firemen in the use of such fuel, for the purpose of showing that the tender was overloaded through the fault of the engineer. *Held,* upon examination of such rules, construed as they would necessarily be understood by the engineman, that no duty was expressly imposed upon him to supervise the loading of the tender or to inspect it in respect to the manner in which it had been loaded; that the rule requiring the fireman to obey the orders

of the engineman respecting the proper use of fuel and the performance of work did not subject the engineman to a charge of negligent omission of duty if the fireman carelessly dropped coal from the tender or put it where it might be shaken off; that the engineman was not responsible for the fireman's negligence under the rule *respondeat superior*, and that a judgment against the defendant must be reversed. (See *Utess v. Erie R. R. Co.*, 131 App. Div. 447; 138 App. Div. 914; 204 N. Y. 324.)

*Utess* v. *Erie R. R. Co.*, 155 App. Div. 879, reversed.

(Argued May 14, 1914; decided June 9, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 10, 1913, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover for personal injuries alleged to have been sustained by plaintiff through the negligence of the defendant, his employer.

The complaint alleged that while standing by the side of a track in defendant's railroad yard flagging a passing train plaintiff was struck on the head by a large piece of coal, which fell from the locomotive tender, thereby receiving the injuries complained of.

Further facts are stated in the opinion.

*Adelbert Moot, John W. Ryan* and *Helen Z. M. Rodgers* for appellant. The trial court committed reversible error in admitting evidence with regard to the speed of the train and the rules regulating the conduct of the engineer, the complaint not charging any negligence in the operation of the train, nor upon the part of the engineer, nor any violation of rules. (*Southwick* v. *F. Nat. Bank*, 84 N. Y. 429; *Douglass* v. *Ferris*, 138 N. Y. 192.) The rules introduced in evidence by the plaintiff did not alter the case, and the decision of· this court upon the former appeal is controlling. (*Burks* v. *Bosso*, 180 N. Y. 344; *McDonnell* v. *Buffalo L., T. & S. D. Co.*, 193 N. Y.

103; *State Board of Pharmacy* v. *Gasau,* 195 N. Y. 202; *Matter of Robinson,* 203 N. Y. 386.) Assuming that the rule requiring the engineer to use every precaution to prevent things dropping from the engine applies to unused coal on the tender, no violation of that rule has been proven. (*McConnell* v. *N. Y. C. & H. R. R. R. Co.,* 63 App. Div. 545; *Anderson* v. *U. P. D. & G. Ry. Co.,* 8 Col. App. 521; *Peet* v. *Remington P. & P. Co.,* 86 App. Div. 101; *Great Northern Ry. Co.* v. *Hooker,* 170 Fed. Rep. 154; *Chicago, R. I. & P. Ry. Co.* v. *Ship,* 174 Fed. Rep. 353.)

*P. Chamberlain* for respondent. The cause was properly submitted to the jury because the engineer was the master for the time being, and whether he was negligent in moving this overloaded tank was a question of fact for the jury. (*Schradin* v. *N. Y. C. & H. R. R. R. Co.,* 124 App. Div. 705; 194 N. Y. 534; *Brown* v. *N. Y. C. & H. R. R. R. Co.,* 126 App. Div. 240; 196 N. Y. 542; *Laplaca* v. *L. S. & M. S. R. R. Co.,* 127 App. Div. 843; *Perry* v. *O. C. R. R. Co.,* 164 Mass. 296; *Dacey* v. *O. C. R. R. Co.,* 153 Mass. 112; *Hart* v. *N. Y. C. & H. R. R. R. Co.,* 205 N. Y. 317.) The defendant is liable for the injury to plaintiff under the common law. (*Bushby* v. *N. Y., L. E. & W. R. R. Co.,* 107 N. Y. 374; *Ford* v. *L. S. & M. S. R. Co.,* 124 N. Y. 493; *Flike* v. *B. & A. R. R. Co.,* 53 N. Y. 549; *Fuller* v. *Jewett,* 80 N. Y. 46; *Dougherty* v. *R., W. & O. R. R. Co.,* 45 N. Y. S. R. 154; *Donnegan* v. *Erhardt,* 119 N. Y. 468; *Miller* v. *N. Y. C. & H. R. R. R. Co.,* 20 Hun, 92; *Fredenburg* v. *N. Y., L. E. & W. R. R. Co.,* 83 Hun, 522; *McConnell* v. *N. Y. C. & H. R. R. R. Co.,* 63 App. Div. 545; *Croll* v. *A. R. R. Co.,* 57 Kans. 548.)

MILLER, J. This action was brought in 1907 by employee against employer to recover for personal injuries sustained in 1906. It illustrates how a litigation may be

protracted by the attempt of a plaintiff to obtain a recovery on different theories on succeeding trials.  The essential facts of the case, with an exception to be noted later, were stated on a former appeal to this court.  (See 204 N. Y. 324.)  The complaint charged that the defendant was negligent in two particulars specified, namely: 1, in failing to furnish the plaintiff a safe place to work, and 2, in overloading the tender with coal.  On the first trial the plaintiff was permitted to recover on the theory that the defendant was negligent in not furnishing him a safe place to work.  A new trial was granted by the Appellate Division on the ground that the doctrine of safe place had no application.  (131 App. Div. 447.)  On the second trial the plaintiff was permitted to recover on the theory that the accident was in some way caused by the negligence of the engineman, although there was no evidence whatever of any duty resting upon him which he had violated.  The judgment entered upon the verdict was affirmed by the Appellate Division by a divided court (138 App. Div. 914), but was reversed by this court on the ground that there was no evidence to warrant the submission of the case to the jury on that theory.  (204 N. Y. 324.)  On the trial now being reviewed the plaintiff introduced in evidence two rules of the defendant which are said to supply the defect in the proof existing on the second trial.  These rules were numbered respectively 232 and 233 and provided, as far as material, as follows:

" 232.  *  *  *  He (the engineman) must report for duty at appointed times, see that the engine is in good working order and furnished with the necessary signals, stores and supplies, giving checks for fuel and stores received, and assist in shifting and making up the train when necessary.  He must exercise caution and good judgment in stopping and starting the train and in moving and coupling cars, so as to avoid disturbance to passengers and injury to persons or property, keep a con-

stant lookout on the track for danger signals and obstructions, stop and inquire respecting signals not understood, and report any neglect of duty observed; use every precaution against setting fires, and not permit wood, burning waste, hot cinders, or any other things to be thrown or dropped from the engine, clean the ash pan only at points specifically designated, inspect and report the condition of the engine at the end of each trip, and assist in making repairs when called upon.    *    *    *

"233. When with engine, a fireman must obey orders of the engineman respecting the proper use of fuel and the manner of performing his work    *    *    *."

The plaintiff was allowed to give evidence of the way in which the train was being run by the engineer when the accident occurred, but the court charged the jury that, while that evidence could be taken into account, it could not in and of itself be the ground of recovery. The doctrine of safe place being out of the case, but one ground of negligence charged remained, namely, that the tender was overloaded. It may be assumed that, if the overloading was due to some omission of duty which the employer owed at common law or to the violation of a duty imposed on a fellow-servant, made by statute a vice-principal (Laws 1906, chap. 657, section 42a), the complaint was broad enough to justify proof of the violation of such duty or duties. The plaintiff must be held to the particular grounds of negligence specified. However, in view of the way in which the effect of the evidence was limited by the court in its charge, we should not be disposed to reverse on the exception to its admission, even were we to hold, as we do not, that the evidence was not admissible for any purpose and that it was not relevant to the specific ground of negligence charged to prove how the train was being run.

The question whether the proof of the rules changes the case in any substantial respect is vital on this appeal. The plaintiff now urges that the appellant violated some

duty which it owed at common law in respect to providing by rule or otherwise a proper and safe method or system of loading the tender, the principal case in this court cited to sustain the point being *Ford* v. *Lake Shore & Michigan Southern Railway Co.* (124 N. Y. 493). But there is no proof in this case of any failure in that respect on the defendant's part. The mere fact that the tender was overloaded, assuming that to have been proved, did not establish that the defendant had failed to provide by rule or otherwise for a proper and safe method of loading. Upon the complaint and the proof the judgment can be sustained only on the theory that the tender was overloaded because of some neglect of duty on the part of the engineman. The tender was loaded at Corning. It had made a trip from Corning to Rochester. There was some evidence that there was coal on and above the coal boards around the tender — one witness said as high as a foot above the tank. That doubtless was some evidence that the tender was overloaded when it started on its trip. Was that due to the negligence of the engineman? The answer to that question depends on the construction of said rules.

The court charged the jury "that there is no evidence tending to show that it was the duty of the engineer to direct those who loaded the tender;" also, "that there is no evidence tending to show that the engineer did not properly discharge his duty if any was imposed upon him, with respect to directing those who loaded the tender;" also, "that the duty of the engineer to give a check for fuel does not charge him with knowledge of the condition and location of the fuel on the tender at the time of the plaintiff's injury;" also, "that the rule which required the fireman when with the engine to obey the orders of the engineman respecting the proper use of fuel and the manner of performing his work did not obligate the engineer to be aware of the location or condition of the coal on the tender at the time of the plaintiff's injury;"

also, that the rule " did not impose upon the engineer the duty of directing the fireman throughout the trip in his disposition of coal upon the tender" or "impose upon an engineer the duty of inspecting the results of the work of the fireman in his disposition of coal upon a tender." Those instructions constitute the law of the case on this appeal and, in view of them, it is difficult to understand how the engineer could be properly charged with responsibility for the manner in which the tender was loaded. However, this cause has been pending so long that it would be unfortunate now to decide it on the law as charged by the trial court without deciding whether the rules, first proven on the last trial, impose any duty on the engineman, the violation of which could fairly be said by a jury to have caused the accident.

We are of the opinion that the instructions above quoted were substantially correct. The rules, of course, are to be construed as they would reasonably and naturally be understood by the engineman. No duty was expressly imposed upon him to supervise the loading of the tender, or to inspect it in respect to the manner in which it had been loaded. He was required to know that the engine was in good working order and furnished with sufficient supplies for the trip and to give checks for fuel and stores received, obviously to prevent waste or misappropriation and to enable the defendant to keep a check on the quantity of materials used. His duty with respect to the supplies was to see that the requisite amount was provided and to give checks for them, and his duty with respect to the condition of the engine obviously related to its machinery. The requirement that he should " use every precaution against setting fires and not permit wood, burning waste, hot cinders or any other things to be thrown or dropped from the engine," was plainly intended to guard against setting fires. The words "other things" must have an *ejusdem generis* interpretation and refer to things liable to set fires

which might be dropped from the firebox or from the part of the engine under the engineer's immediate control. This is shown by the context, by the specific words "wood, burning waste and hot cinders," and by the requirement immediately following with respect to cleaning the ashpan. Obviously, the engineer must concentrate his attention upon the running of the engine and upon the track and signals ahead. He was not bound to know that nothing dropped from the tender, although the trial court so instructed the jury. The rule requiring the fireman to obey his orders respecting the proper use of fuel and the manner of performing his (the fireman's) work did not subject him to a charge of negligent omission of duty if the fireman carelessly dropped coal from the tender or put it where it might be shaken off. He was not responsible for the fireman's negligence under the maxim "*respondeat superior.*"

The judgment should be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CUDDEBACK, HOGAN and CARDOZO, JJ., concur.

Judgment reversed, etc.